**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Modulus Financial Engineering Incorporated, | No. CV-19-04685-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Modulus Data USA Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction, (Doc. 16, "Mot."). Plaintiff Modulus Financial Engineering Inc. ("Modulus") responded, (Doc. 21, "Resp."), and Defendants Modulus Data USA, Inc. and Modulus Data, Inc. replied, (Doc. 23, "Reply"). The Court has considered the pleadings, exhibits, and applicable law and will grant Defendants' Motion.[1]

**I.    BACKGROUND**

Modulus is an Arizona software design and development services corporation that provides its services across the world.[2] (Doc. 1, "Compl." ¶¶ 2, 8.) Its complaint alleges various federal, state, and common law claims of trademark infringement, unfair competition, and cancellation of trademarks against Defendants Modulus Data USA and

---

[1] No party requested oral argument and the Court finds the Motion suitable for resolution without hearing. LRCiv 7.2(f).
[2] While not directly relevant for jurisdictional purposes, Modulus owns the trademark "Modulus" in connection with "[s]oftware design and development" and "[c]omputer software development tools; [c]omputer software for statistical analysis, database engines, finance, stock trading, stock market data and artificial intelligence." (Compl. ¶ 9.) The June 16, 2015 registration certificate shows Modulus has continuously used the mark since March 22, 2002. (*Id.* ¶¶ 8, 10.)

Modulus Data. (*See generally id.* ¶¶ 1, 76-118.) Modulus Data USA is a New York corporation with its principal place of business in Massachusetts and Modulus Data is a Canadian entity. (*Id.* ¶¶ 3-4; Doc. 16-1 at 2, 5.) Defendants, formerly operating as Log10 Solutions, provide various tools and services concerning software and database integration and allegedly began infringing on Plaintiff's trademarks sometime in September 2015. (Compl. ¶¶ 19-25.)

The complaint alleges virtually no conduct by either Defendant involving Arizona.[3] Neither Defendant has ever: (1) held an office or place of business in Arizona; (2) specifically targeted or advertised to Arizona residents; (3) employed an authorized representative in Arizona; (4) had Arizona clients; (5) earned revenue from Arizona; or (6) sold goods or services in Arizona using the allegedly infringing trademarks. (Doc. 16-1 at 2-3, 5-6.) With these allegations in mind, Defendants move to dismiss for lack of personal jurisdiction.

**II. LEGAL STANDARD**

Before trial, a defendant can move to dismiss the complaint against him for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); Fed. R. Civ. P. 12(b)(2). Plaintiff bears the burden of establishing personal jurisdiction. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017); *see also Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995). When the motion is based on written materials rather than an evidentiary hearing, as is the case here, "plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (citing *Data Disk*, 557 F.2d at 1285). In determining whether plaintiff has met this burden, the complaint's uncontroverted allegations must be taken as true, and "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes

---

[3] The closest paragraph alleges that "a substantial part of the events or omissions giving rise to the claim occurred in this district and/or a substantial part of property that is subject of the action is situated in this district." (Compl. ¶ 7.) Nothing else comes close. (*See id.* ¶¶ 18-118.) In fact, it appears that the impetus for this lawsuit stems from a Chicago conference. (*See id.* ¶ 72-75.)

of deciding whether a prima facie case for personal jurisdiction exists." *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (internal quotation marks and citation omitted).

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018) (citation omitted). Arizona law exercises personal jurisdiction to the "maximum extent permitted by the Arizona Constitution and the United States Constitution." Ariz. R. Civ. P. 4.2(a); *see also A. Uberti and C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995) (analyzing personal jurisdiction in Arizona under federal law). Therefore, analyzing personal jurisdiction under Arizona law and federal due process is the same. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

In the personal jurisdiction context, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden*, 571 U.S. at 283 (citation and internal quotations omitted). "Depending on the strength of those contacts, there are two forms that personal jurisdiction may take: general and specific." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation omitted); *see also Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997). General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state, whereas specific jurisdiction exists when the controversy arises from or is related to the defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Modulus only asserts the Court has specific jurisdiction over Defendants.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283–84 (internal quotation marks and citation omitted). Courts "employ a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot*, 780 F.3d at 1211 (quoting *Schwarzenegger*, 374 F.3d at 802). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802 (citing *Sher*, 911 F.2d at 1361). If it does so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476–78). Absent a showing of a "compelling case" that exercising jurisdiction would be unreasonable, it is presumed reasonable. *Burger King*, 471 U.S. at 477. If a plaintiff fails to meet the first prong, the Court need not address the others. *Ariz. Sch. Risk Retention Trust, Inc. v. NMTC, Inc.*, 169 F. Supp. 3d 931, 936 (2016).

### III.     DISCUSSION

Modulus claims the Court has specific, but not general, personal jurisdiction over Defendants because they purposefully directed their tortious conduct at Arizona. It also claims jurisdictional discovery is appropriate if the Court finds it lacks personal jurisdiction over them. As explained below, the Court disagrees with Modulus on both claims.

A. <u>The Court Lacks Personal Jurisdiction Over Defendants.</u>

In claiming "[p]ersonal jurisdiction is beyond question," Modulus contends, without distinguishing between the two Defendants, that the Court can exercise specific jurisdiction over both. (*See* Mot. at 6-17.) It generally argues personal jurisdiction exists because Defendants "targeted [it] and its intellectual property in Arizona, with knowledge that [it] was a resident of Arizona." (*Id.* at 2.) The Court begins with the minimum contacts test.

i. <u>Purposeful Direction</u>

The first prong of the minimum contacts test requires Modulus to show Defendants "either (1) 'purposefully availed' [themselves] of the privilege of conducting activities in the forum, or (2) 'purposefully directed' [their] activities toward the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (citing *Schwarzenegger*, 374 F.3d at 802). "A purposeful availment analysis is most often used in suits sounding in contract," while a purposeful direction analysis "is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802; *Ziegler*, 64 F.3d at 473 ("we apply different purposeful availment tests to contract and tort cases"); *Brown v. Reese*, No. CV12-2003 PHX DGC, 2013 WL 525354, at *4 (D. Ariz. Feb. 11, 2013) ("[T]he Ninth Circuit has held that a district court should apply different jurisdictional tests to contract and tort cases.").

Since Modulus's complaint alleges seven claims sounding in tort, the Court will apply the "purposeful direction" test.[4] *See*, *e.g.*, *Marvix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) ("Because Marvix has alleged copyright infringement, a tort-like cause of action, purposeful direction is the proper analytical framework" (internal quotation marks and citation omitted)); *Morrill*, 873 F.3d at 1142 ("The [purposeful direction] test applies here given the [tortious] nature of the underlying

---

[4] Neither party seems to dispute using this test either. Modulus argues that "Defendants [p]urposefully [d]irected [t]heir [a]ctivities to Arizona," (Resp. at 7), while Defendants claim "Plaintiff cannot establish purposeful direction[,]" (Mot. at 4; *see also* Reply at 9 ("Plaintiff cannot demonstrate that Defendants purposefully directed any activities toward Arizona.")). Defendants dispute, however, whether the Court should use *Calder* in analyzing purposeful direction. (*See* Reply at 6-7 (arguing that "courts in this jurisdiction do not *always* apply the *Calder* 'effects' test to assess the 'purposeful direction' requirement in trademark infringement cases." (emphasis added))). As the Court previously explained, this argument is unpersuasive. (*See generally* Doc. 29.)

claims."). Purposeful direction is evaluated under the three-part "effects" framework outlined in *Calder v. Jones*, 465 U. S. 783 (1984). *See Schwarzenegger*, 374 F.3d at 805. It "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered at the forum state." *Id.* (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)); *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitiseme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (noting same). *Calder*'s first part is unquestionably satisfied,[5] but the second is not.

### 1. Defendants Did Not Expressly Aim Their Conduct at Arizona.

*Calder*'s second part "asks whether the defendant's allegedly tortious action was 'expressly aimed at the forum.'" *Picot*, 780 F.3d at 1214 (citation omitted); *see also Pebble Beach*, 453 F.3d at 1156. Express aiming requires "'something more' than mere foreseeability" that an out-of-state defendant's conduct impacted the forum in question. *Schwarzenegger*, 374 F.3d at 805 (citation omitted). Although the only factual assertions concerning Defendants' Arizona conduct are raised in Modulus's response, it argues this part of *Calder* is satisfied for two reasons. First, because Defendants knew its headquarters was in Arizona when they committed the alleged tortious conduct. Second, because they purchased ads that solicited business from Arizona and displayed the infringing mark on web browsers here. (Resp. at 6, 12-13.) For jurisdictional purposes here, the Court assumes these claims are true. *See Compagnie Bruxelles Lambert*, 94 F.3d at 588.

Defendants argue this fails to make a prima facie showing of personal jurisdiction. They claim the complaint does not allege their tortious conduct occurred in or directly targeted Arizona. (Mot. at 5-6; *see also* Reply at 9 ("Plaintiff's mere allegations of 'intentional infringement' are thus insufficient to demonstrate that Defendants 'expressly aimed' their actions at Arizona or knew harm would likely be suffered in Arizona.")) They more particularly argue that:

---

[5] Accepting Modulus's allegations as true, Defendants committed intentional acts by infringing on its intellectual property rights, which is the basis for each claim. (*See* Compl. ¶¶ 18-76, 86, 93, 100, 107, 112, 116.)

- 6 -

> The mere fact that their website is accessible in Arizona does not equate to conduct targeting Arizona consumers. Defendants do not encourage consumers in Arizona to access its webpage, nor do they have clients in Arizona. When a website advertiser does nothing other than register a domain name and post an essentially passive website, and nothing else is done to encourage residents of the forum state, there is no purposeful direction at the forum.

(*Id.*) They further argue that "even if Defendants were on notice of Plaintiff's residence, the foreseeability of injury in a forum is not a sufficient benchmark for exercising personal jurisdiction." (Reply at 9.) After considering both parties' arguments, the Court agrees with Defendants. Modulus has not made its required prima facie showing that Defendants expressly aimed their conduct at this forum. *Cf. Picot*, 780 F.3d at 1215.

        a. <u>Defendants' Mere Knowledge of Modulus's Presence in Arizona Does Not Show They Express Aimed Their Conduct at This Forum.</u>

Modulus's first argument that Defendants' knowledge of its location in Arizona when they committed the alleged tortious conduct shows they expressly targeted Arizona is unpersuasive. *See Walden*, 571 U.S. at 290; *see also Morrill*, 873 F.3d at 1145 ("[T]he potential foreseeability of some incidental harm to Plaintiff[] in Arizona . . . without more, does not show that Defendants expressly targeted the forum state."). In *Walden*, the Supreme Court held that an out-of-state tortfeasor's mere knowledge of a plaintiff's "strong forum connections," combined with the fact that harm was foreseeable to plaintiff in that forum, "improperly attribute[d] a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis." *Walden*, 571 U.S. at 289. This is exactly what Modulus asks the Court to do here.

In claiming its approach is appropriate, Modulus relies in part on *Jason Scott Collection Inc. v. Trendily Furniture LLC*, No. CV-17-02712-PHX-JJT, 2017 WL 6888514, at *1, *3-4 (D. Ariz. Oct. 25, 2017). There, the court found personal jurisdiction over a Texas company that was selling counterfeits of plaintiff's copyrighted furniture,

- 7 -

even though no sales occurred in Arizona, because defendant knew the infringement would be felt here. *Id.* However, later that year in *Axiom Foods, Inc. v. Acerchem Int'l, Inc.,* 874 F.3d 1064, 1070 (9th Cir. 2017), the Ninth Circuit made clear that "while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires." Since *Axiom*, courts in this Circuit have agreed that "infringement of a plaintiff's intellectual property rights with knowledge that plaintiff's operations are based in the forum and that the harm will be felt there, is insufficient to establish personal jurisdiction without a further showing that the defendant otherwise expressly aimed its activities at the forum." *Theos Med. Sys., Inc. v. Nytone Med. Prod., Inc.*, Case No. 19-cv-01092-VKD, 2020 WL 500511, at *7 (N.D. Cal. Jan. 31, 2020) (quoting *One True Vine, LLC v. Liquid Brands, LLC*, No. C-10-04102-SBA, 2011 WL 2148933, at *4 (N.D. Cal. May 31, 2011); *see also Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*, No. CV 19-cv-07831-AB, 2019 WL 8064196, at *4 (C.D. Cal. Dec. 5, 2019) (explaining same).

Requiring more than mere knowledge or foreseeability of harm makes sense too. Only considering where Modulus is harmed distorts the proper focus of the "minimum contacts" inquiry, which is "the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 287 (quoting *Calder*, 465 U.S. at 788). Modulus's request improperly asks the Court to do that here by considering its location in Arizona and importing its forum connections to Defendants. Again, courts have repeatedly rejected this argument. *See Walden*, 571 U.S. at 290 ("*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum."); *see also Morrill*, 873 F.3d at 1145 ("*Calder* adopted the rule that to establish the basis for specific personal jurisdiction, a tort must involve the forum state itself, and not just have some effect on a party who resides there."); *Picot*, 780 F.3d at 1214 ("Rather, 'an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.'" (quoting *Walden*, 571 U.S. at 290)).

Since "[t]he proper question is not where the plaintiff experienced a particular injury

- 8 -

or effect but whether the defendant's conduct connects him to the forum in a meaningful way," *Walden*, 571 U.S. at 290, Defendants' mere knowledge of Modulus in Arizona, by itself, does not meaningful connect *them* to this forum. Rather, this knowledge more readily shows Modulus is connected here, which is entirely irrelevant in considering Defendants' connections. *See Morrill*, 873 F.3d at 1143 (explaining that a defendant's "relationship must arise out of contacts that [it] creates with the forum" and "not the defendant's contacts with persons who reside there"). If the opposite were true, and Modulus could somehow tether Defendants to Arizona in a meaningful way by the simple fact that it resides here, personal jurisdiction would indeed be a nullity. Accordingly, Defendants' connections with this forum by the sole fact that they knew Modulus is located here and would be harmed here insufficiently shows they expressly aimed their conduct at Arizona. *Cf. id.* at 1148-49.

> b. <u>Defendants' Online Presence Does Not Show They Expressly Aimed Their Conduct at Arizona.</u>

Modulus's second argument that Defendants expressly targeted Arizona through their online presence is similarly unpersuasive. As an initial matter, Modulus points to no allegations supporting its argument. Nonetheless, it first argues Defendants expressly targeted Arizona because they directed online ads at Arizona consumers. The only support for this is counsel's affidavit, which states that "while browsing the internet from [his] office in Phoenix, Arizona, [he] was presented with a Google Ad for Defendants' offerings." (Doc. 21-1 ¶ 8.) However, this declaration does not show the ad was specifically directed at Arizona consumers, only that it showed up here. *See Marvix Photo*, 647 F.3d at 1231 ("Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed."). To be sure, the situation here is quite unlike the one in *Marvix Photo*, where the Ninth Circuit found the express aiming requirement met because "a substantial number of hits to [defendant's] website came from California residents" and it had a "specific focus on California—centered [on] celebrity and entertainment industries." *Id.* at 1230. There is nothing supporting a similar finding here besides an isolated ad appearing on counsel's web

browser while he was in Arizona.[6] One can easily imagine how absurd it would be if counsel walked across state lines to New Mexico, opened his laptop, and wrote a similar affidavit and the Court permitted suit there based on this happenstance. This is clearly incorrect, and the mere viewing of the ad in Arizona by Modulus's counsel cannot be attributed to Defendants. *See Walden*, 571 U.S. at 286 ("[I]t is likewise insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff." (quoting *Burger King*, 471 U.S. at 475)).

Modulus also argues that Defendants expressly aimed their conduct at Arizona by operating a website allowing prospective clients, including but not exclusively Arizonans, to download a master services agreement, request a lengthy white paper, and communicate with them. (Resp. at 6.) This does not show "express aiming" is satisfied either. Although the Ninth Circuit in the past has understandably "struggled with the question [of] whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed" because of the rapidly changing pace of technology, it has provided some guidance to lower courts. *See Marvix Photo*, 647 F.3d at 1229 (citations omitted). As the court outlined:

> On the one hand, we have made clear that maintenance of a passive website alone cannot satisfy the express aiming prong. On the other, we have held that operating even a passive website in conjunction with something more— conduct directly targeting the forum—is sufficient. In determining whether a nonresident defendant has done something more, we have considered several factors, including the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant individually targeted a plaintiff known to be a forum resident.

*Id.* (internal quotation marks and citations omitted). In other words, just because a defendant operates a website does not mean the "expressly aimed" requirement disappears. *Id.* Instead, a defendant's virtual presence is merely a medium for which the court must

---

[6] Modulus does not argue that anything in the advertisement explicitly targets Arizona's marketplace either.

consider in determining whether a defendant expressly aimed its conduct at the forum.[7] The Court's conclusion today comports with this guidance. Although anyone, including Arizonans, can access Defendants' website, nothing on it indicates they used it to expressly aim their tortious conduct at Arizona. This is especially true considering Defendants "never had an office in Arizona, do not specifically target or advertise to residents of Arizona, have no clients in Arizona, have not earned any revenue from Arizona, and never sold any goods or services that utilize the name or mark Modulus in any manner in Arizona." (Reply at 10; *see also* Docs. 16-1 at 2-3, 5-6.) Instead, Defendants' virtual contacts appear to be precisely what the Supreme Court coined as "random, fortuitous, or attenuated" contacts with Arizona that exist simply because they host a universally accessible website. *Cf. Walden*, 571 U.S. at 286; *Burger King*, 471 U.S. at 475. This is not enough to show "express aiming" under *Calder*.

In sum, Modulus has not alleged or otherwise provided any evidence outlining Defendants' necessary minimum contacts showing a meaningful connection between Defendants and Arizona exists to permit the Court to exercise its limited jurisdiction over them. To the contrary, Defendants' uncontradicted rebuttal evidence shows they lacked, and still lack, any meaningful connection to this forum. Thus, because Modulus has failed to show Defendants alleged infringement was expressly aimed at Arizona, the Court will not analyze *Calder*'s third requirement, *Schwarzenegger*, 374 F. 3d. at 807 n.1, or the remaining prongs of the minimum contacts test. *Ariz. Sch. Risk Retention Trust*, 169 F. Supp. 3d at 936. Because the Court lacks personal jurisdiction over Defendants, dismissing them is required. *Cf. Walden*, 571 U.S. at 291.

B. Jurisdictional Discovery is Unwarranted.

Modulus alternatively requests the opportunity to conduct jurisdictional discovery

---

[7] This of course also presumes that the underlying tortious conduct arises out of defendant's virtual presence, since the Court is limited to considering whether "the defendant's *suit-related conduct* . . . create[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 284 (emphasis added). As the Ninth Circuit reasoned, considering virtual contacts created through a website not otherwise related to the underlying tortious conduct would be improper. *See Picot*, 780 F.3d at 1215 n.3 ("A plaintiff may not create personal jurisdiction over one claim by arguing that jurisdiction might be proper over a different hypothetical claim not before the court." (citation omitted)).

if the Court finds that it has failed to establish a prima facie case of personal jurisdiction over Defendants. (Resp. at 17.) Modulus believes jurisdictional discovery would "further demonstrate Defendants' purposeful targeting and evince additional contacts with the State of Arizona, including U.S./Arizona-based clients or partners, other promotional efforts in the State, and prior versions of the website with greater levels of interactivity." (*Id.*) Defendants argue jurisdictional discovery "would be a waste of party and judicial resources." (Reply at 11.) The Court agrees with Defendants.

A trial court has broad discretion as to whether to permit limited jurisdictional discovery. *Data Disk*, 557 F.2d at 1285 n.1 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). While "[d]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary," *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (citations and internal quotations omitted), "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendant[], the Court need not permit even limited discovery," *Pebble Beach*, 453 F.3d at 1160 (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)). A court also need not permit "[a plaintiff's] request for discovery . . . based on little more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

Modulus's reaching request for jurisdictional discovery appears to be a fishing expedition for jurisdictional facts and will be denied. *Pebble Beach*, 453 F.3d at 1160; *see also Johnson v. Mitchell*, No. CIV-S-10-1968-GEB-GGH-PS, 2012 WL 1657643, at *7 (E.D. Cal. May 10, 2012). On a fundamental level, the complaint contains virtually no jurisdictional allegations. Even after the barren complaint was challenged, Modulus provided nothing evincing the Court's personal jurisdiction over either Defendant beyond affidavits by counsel and screenshots of the parties' websites. As explained above, these things do not show Defendants are meaningfully connected to Arizona. Modulus's ad hoc,

last-minute hunches that additional information might turn up and establish personal jurisdiction is no cause for opening discovery, even under limited circumstances.[8] *Boschetto*, 539 F.3d at 1020. To allow discovery at this stage, especially where neither party claims no forum otherwise has personal jurisdiction over Defendants as it relates to Modulus's claims, is unwarranted.

## IV. CONCLUSION

Modulus has failed to make a prima facie showing that Defendants have sufficient minimum contacts with Arizona that meaningfully connect them here. There is nothing, allegation or otherwise, illustrating how their underlying tortious conduct impacted Arizona, let alone how it was purposefully directed at this forum. Modulus similarly fails to show why limited jurisdictional discovery is warranted under these circumstances.

Accordingly,

**IT IS ORDERED GRANTING** Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction, (Doc. 16);

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this case.

Dated this 14th day of May, 2020.

_____
Honorable Susan M. Brnovich
United States District Judge

---

[8] Modulus also does not explain with any clarity which anticipated jurisdictional facts would impact which parts of the Court's jurisdictional calculus.

- 13 -